1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TRACY J. DUBORD,                              No.  2:16-cv-1402-CMK

12              Plaintiff,

13        vs.                                      <u>ORDER</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,

15              Defendant.

16   _____/

17              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

18   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

19   Pending before the court are plaintiff's motion for summary judgment (Doc. 11) and defendant's

20   cross-motion for summary judgment (Doc. 13).

21                            I.  PROCEDURAL HISTORY[1]

22              Plaintiff applied for social security benefits protectively on December 7, 2012,

23   alleging an onset of disability on June 1, 2011, due to bipolar disorder, anxiety/panic disorder,

24   _____

25        [1]  Because the parties are familiar with the factual background of this case, including
     plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The
26   facts related to plaintiff's impairments and medical history will be addressed insofar as they are
     relevant to the issues presented by the parties' respective motions.

                                          1

PTSD, chronic fatigue syndrome, GERD, irritable bowel syndrome, other disorders of gastrointestinal system, and affective (mood) disorder (Certified administrative record ("CAR") 83, 96-97, 105, 198). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held via video on August 28, 2014, before Administrative Law Judge ("ALJ") Carol A. Eckersen. In a November 21, 2014, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since June 1, 2011, the alleged onset date (20 CFR 404.1571 et seq.)

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

3. The claimant has the following severe impairments: bilateral carpal tunnel syndrome, fibromyalgia, chronic fatigue syndrome, bipolar disorder, major depressive disorder, panic disorder and post traumatic stress disorder. (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, [the ALJ] find[s] that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: occasional climbing of ladders, ropes or scaffolds; occasional stooping and crouching; occasional fingering and handling; simple, routine and repetitive work; and only occasional face-to-face interaction with the general public and coworkers.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant born on June 11, 1963 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (SSR 82-41 and 20 CFR Park 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 202.1569 and 414.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, at any time from June 1, 2011, through the date of this decision (20 CFR 404.1520(g)).

(CAR 12-27). After the Appeals Council declined review on April 28, 2016, this appeal followed.

///

///

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III. DISCUSSION

Plaintiff argues the ALJ erred by relying on the Medical-Vocational Guidelines ("Grids"), without the aid of a vocational expert, to deny benefits at Step 5. She contends that due to the significant non-exertional limitations in her Residual Functional Capacity (RFC), the ALJ was required to utilize the expertise of a vocational expert. Defendant counters that the use of the Grids was appropriate as plaintiff's non-exertional limitations did not require a vocational expert because her non-exertional limitations did not significantly erode the occupational base.

The Medical-Vocational Guidelines provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[3] See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may rely on the Grids when a

---

[3]     Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).
     Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988). The Grids do "provide for the evaluation of claimants asserting both exertional and non-exertional limitations," unless "a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations." Razey v. Heckler, 785 F.2d 1426, 1430 (9th Cir. 1986), Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988). For the Grids to be inadequate, the nonexertional limitation must be " 'sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations.' " Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (quoting Burkhart, 856 F.2d at 1340). "However, where a claimant suffers solely from a nonexertional impairment, the grids do not resolve the disability question." Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989 (citing  20 C.F.R. Part 404, Subpart P, Appendix 2, §§ 200.00(e)); see also Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir.2001) (determining the ALJ committed clear legal error by relying entirely on the grids to determine whether there was work the claimant was capable of performing where the claimant had no severe physical impairments and her only severe impairments were psychiatric).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart, 587 F.2d at 1341.

Here, as set forth above, the ALJ determined plaintiff's severe impairments consisted of bilateral carpal tunnel syndrome, fibromyalgia, chronic fatigue syndrome, bipolar disorder, major depressive disorder, panic disorder and post-traumatic stress disorder. He determined she has the RFC to perform light work, but was additionally limited to "occasional

climbing of ladders, ropes or scaffolds; occasional stooping and crouching; occasional fingering and handling; simple, routine and repetitive work; and only occasional face-to-face interaction with the general public and coworkers." (CAR 17). Based on that RFC, and other appropriate factors, the ALJ determined there are jobs that exist in significant numbers in the national economy that plaintiff can perform. In so determining, the ALJ reasoned:

> If the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21 and Rule 202.14. However, the additional limitations have little or no effect on the occupational base of unskilled light work. A finding of "not disabled" is therefore appropriate under the framework of these rules.
>
> The limitation of occasional climbing of ladders, ropes or scaffolds does not significantly affect the occupational base. The inability to ascend or descend ladders, scaffolding, poles, stairs and ropes has very little or no effect on the unskilled light occupational base (SSRs 83-14 and 85-15). Relatively few jobs in the national economy require ascending or descending ladders, scaffolding, poles or ropes (SSR 83-14). The additional limitations of only occasional bending and stooping do not affect the occupational base of unskilled light work because they are already only occasionally required for light work (SSR 83-12 and 85-14). Since crouching is not required in light work according to SSR 83-12, the limitation for only occasional crouching does not affect the occupational base of light.
>
> The residual functional capacity contains a restriction with respect to occasional fingering and handling. While handling is required in almost all jobs, insignificant limitations in handling will not eliminate large numbers of occupations a person would otherwise perform (SSR 85-15 and 96-9p). This does not affect the occupational base of light. Similarly, her fingering abilities are not a significant limitation because light work generally does not require the use of the fingers for fine activities to the extent required for sedentary work (SSR 83-10).
>
> A limitation of occasional face-to-face interaction with the general public and coworkers would not significantly erode the occupational base. I note that this limitation does not preclude other means of interaction (e.g., telephone, email, write). Unskilled jobs ordinarily involve dealing primarily with objects, rather than with data or people (SSR 85-15). Interaction with the general public and coworkers is not one of the basic mental demands generally required by competitive remunerative, unskilled

work, the loss of which would substantially erode the occupational base (SSRs 85-15 and 96-9p). Furthermore, the guidelines in the Dictionary of Occupational Titles (DOT) and Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCODOT) reveal that relatively few simple, repetitive, unskilled occupations require an employee to have more than occasional public contact throughout the workday. This conclusion is also supported by Social Security Rules 83-14, 85-15, 96-7p fn.5, 96-9p and by http://ssas.com/137sedhtm (online list of the 137 unskilled occupations mentioned in SSR 96-9p, fn.5). Thus, the occupational base at all levels is also not significantly eroded by the claimant's limitation to occasional public contact. Accordingly, the above limitations do not significantly erode the occupational base of light work.

(CAR 26-27).

The undersigned finds plaintiff's arguments persuasive. This is not a case wherein the ALJ determined plaintiff had only limited non-exertional limitations. Rather, the limitations contained in the RFC are significant. In addition to finding plaintiff capable of only light work, she also determined she is limited to only occasionally climbing ladders, ropes or scaffolds, stooping or crouching, and fingering or handling; she is further limited to simple, routine and repetitive tasks, and only occasional face-to-face with the public and coworkers.

While the ALJ cited Social Security Rulings (SSR) to support her decision, those citations are not completely supportive. Specifically, the ALJ cited SSR 83-14 and 85-15. However, SSR 83-14 states: "Unlike unskilled sedentary work, many unskilled light jobs do not entail fine use of the fingers. Rather, they require gross use of the hands to grasp, hold, and turn objects. Any limitation on these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work." SSR 83-14, 1983 WL 31254 at *4. To the extent the ALJ determined plaintiff is limited to only occasionally handling, this would appear to be a significant non-exertional limitation.[4] Similarly, SSR 85-15 states: "Reaching (extending the

_____

[4] Plaintiff argues the limitation to only occasionally fingering is also significant. However, SSR 83-14 makes it clear that fingering ability is more important at the sedentary level, while handling is more significant at the light exertion level.

8

hands and arms in any direction) and handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs. Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do." SSR 85-15, 1985 WL 56857 at *4. A limitation to only occasionally handling would be significant.

In addition, the ALJ limited plaintiff to simple, routine and repetitive tasks, as well as some limitation as to dealing with the public and coworkers.[5] In respect to those limitations, SSR 85-15 states:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

Id.

Accordingly, some of the limitations the ALJ assessed and included in plaintiff's RFC appear to be "sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations." Hoopai, 499 F.3d at 1075. As such, the ALJ was required to call a vocational expert to testify as to whether there were jobs in the national economy a person with plaintiff's limitations could perform. While the ALJ did call a vocational expert to testify at the hearing, the hypothetical asked of the vocational expert did not contain the limitations the ALJ later included in the RFC. Thus, the testimony of the vocational expert did not satisfy the requirement at Step 5. To the extent defendant argues that the vocational expert testified that an individual with the non-exertional limitations noted as above, but at the

---

[5] Plaintiff's argument again exceeds the limitations the ALJ assessed her with in her argument. She does not, however, challenge the RFC determination. Regardless, as set forth above, the undersigned finds the limitations actually assessed are still sufficiently significant to require the testimony of a vocational expert.

sedentary exertional level, such an individual would be capable of performing work, does not meet the ALJ's burden.

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Here, the hypotheticals posed to the vocational expert did not adequately capture the limitations set forth in the RFC. Thus, the testimony has no evidentiary value, and the ALJ failed to meet her burden at Step 5.

IV. CONCLUSION

Based on the foregoing, the court concludes that the ALJ committed reversible error by relying on the Grids and not utilizing the testimony of a vocational expert in determining there are jobs that exist that plaintiff is capable of performing. Accordingly, IT IS HEREBY ORDERED that:

    1.    Plaintiff's motion for summary judgment (Doc. 11) is granted;

    2.    Defendant's cross-motion for summary judgment (Doc. 13) is denied;

    3.    This matter is remanded for further proceedings consistent with this order; and

/ / /

/ / /

/ / /

1          4.      The Clerk of the Court is directed to enter judgment and close this file.

DATED:  April 5, 2018

                                                    _____
                                                    CRAIG M. KELLISON
                                                    UNITED STATES MAGISTRATE JUDGE